## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

NOVO NORDISK A/S AND NOVO
NORDISK INC.,

              Plaintiffs,

    v.

FOREVER WEIGHT LOSS, LLC,

              Defendant.

Case No.

## **COMPLAINT**

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Forever Weight Loss, LLC ("Defendant") for trademark infringement, false advertising, and unfair and deceptive trade practices, and seek injunctive, monetary, and other relief.   Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts and on information and belief as to all other matters.

## **INTRODUCTION**

1.     Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat chronic diseases like diabetes and obesity.

2.     The development of semaglutide is an example of Novo Nordisk's commitment to innovation for those living with chronic diseases.   Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):  Ozempic® (semaglutide) injection and Rybelsus®

1

(semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.      Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4.      Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.      The FDA has not approved any generic versions of semaglutide medicines. To the contrary, the FDA has sent warning letters to companies that have claimed that their unapproved drug products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic® and Wegovy® are the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6.      This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the common law arising out of Defendant's infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks and Defendant's acts of false advertising and unfair and deceptive trade practices.

7.      Defendant uses Novo Nordisk's Ozempic® and Wegovy® marks to market and sell to patients compounded drug products that purport to contain semaglutide.[2]

---

[1] U.S. FOOD & DRUG ADMIN., WARNING LETTER TO OZEMPEN.COM, MARCS-CMS 684435 (June 24, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024.

[2] The FDA has declared that the shortage of Ozempic® and Wegovy® has ended, rendering it illegal under federal compounding laws for any entity to participate in, or cause, the sale or distribution of compounded "semaglutide" drugs that are essentially a copy of the Ozempic® or Wegovy® medicines, except in rare circumstances. U.S. FOOD & DRUG ADMIN., *Declaratory Order:  Resolution of Shortages of Semaglutide Injection Products (Ozempic and Wegovy)* (Feb. 21, 2025), https://www.fda.gov/media/185526/download.

8.      Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

9.      Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

10.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

11.     Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12.     NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

13.     NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

14.     NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

15.     Defendant Forever Weight Loss, LLC is a Missouri limited liability company with a business address at 140 Chesterfield Commons East Road, Chesterfield, Missouri 63005 and a registered agent address at 107 Place De Yeager, Lake Saint Louis, Missouri 63367.

16.     Defendant sells and promotes compounded drug products that purport to contain semaglutide, but that have not been approved by the FDA ("Unapproved Compounded Drugs").

17.     Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to Novo Nordisk's FDA-approved medicines.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

19. The Court has supplemental jurisdiction over the common law cause of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

20. Defendant is subject to personal jurisdiction in this District because Defendant is a Missouri limited liability company and has a principal place of business in this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC®, WEGOVY®, AND RYBELSUS® TRADEMARKS

22. Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines. The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly owned subsidiary, NNI.

23. The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease, as well as the risk of kidney disease worsening, kidney failure (end-stage kidney disease), and death from cardiovascular disease in adults with type 2 diabetes and chronic kidney disease.

24. The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in obese adults and children aged twelve years and older, and some

adults with weight-related medical problems, along with a reduced calorie diet and increased physical activity.

25.     The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and who are either obese or overweight.

26.     The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

27.     The Ozempic®, Wegovy®, and Rybelsus® medicines have been studied in clinical trials and are FDA-approved.

28.     Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

29.     The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should be prescribed only in direct consultation with, and under the supervision of, a licensed healthcare professional.

30.     Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

31.     The Ozempic® trademark is inherently distinctive.

32.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in different channels, directed to physicians, other health care professionals, and patients, including on the websites ozempic.com and novonordisk-us.com.  As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

33.    Plaintiff NNAS owns U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical preparations, in International Class 5. A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

34.    Novo Nordisk's right to use its registered Ozempic® mark is incontestable.

35.    Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021, and has used it continuously since that time.

36.    The Wegovy® trademark is inherently distinctive.

37.    Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com. As a result of its use of the Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

38.    Plaintiff NNAS owns (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5. True and correct copies of Plaintiff's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

39.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® marks are exclusively associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets of Novo Nordisk.

40.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known, strong, and famous marks, and became such before any of the acts of Defendant complained of herein.

### DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS

41.    Novo Nordisk does not sell and has never sold its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus®, to Defendant for resale or redistribution.

42.    Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

43.    The FDA has not approved Defendant's Unapproved Compounded Drugs.

44.    On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

45.    The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[3]

46.    According to the FDA, "[c]ompounded drugs are not FDA-approved.  This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[4]

---

[3] U.S. FOOD & DRUG ADMIN., HUMAN DRUG COMPOUNDING (2024), https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.
[4] U.S. FOOD & DRUG ADMIN., COMPOUNDING LAWS AND POLICIES (2020), https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

47.    The FDA has further stated that it "does not verify the safety, effectiveness or quality of compounded drugs before they are marketed."[5] "Unnecessary use of compounded drugs may expose patients to potentially serious health risks."[6]

48.    As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[7]

49.    The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.  Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.    Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis.

50.    The chemical synthesis process, which is not used for the semaglutide in any FDA-approved semaglutide medicines, has resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[8]

---

[5] U.S. FOOD & DRUG ADMIN., COMPOUNDING AND THE FDA: QUESTIONS AND ANSWERS (2024), https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

[6] *Id.*

[7] U.S. FOOD & DRUG ADMIN., FDA ALERTS HEALTH CARE PROVIDERS, COMPOUNDERS AND PATIENTS OF DOSING ERRORS ASSOCIATED WITH COMPOUNDED INJECTABLE SEMAGLUTIDE PRODUCTS (2024), https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[8] Morten Hach et al., *Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs*, PHARM. RSCH., Oct. 2024, available at https://pubmed.ncbi.nlm.nih.gov/39379664/.

51.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[9]  In several instances, patients mistakenly administered five to twenty times more than the intended dose of compounded "semaglutide."[10]

52.    The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

53.    A previous publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[11]

54.    FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that:  (1) "compounded drugs are not FDA approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . .  However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[12]

---

[9] *See* U.S. FOOD & DRUG ADMIN., *supra* note 7.
[10] *Id.*
[11] Joseph E. Lambson et al., *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. AM. PHARMACISTS ASS'N 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.
[12] U.S. FOOD & DRUG ADMIN., FDA'S CONCERNS WITH UNAPPROVED GLP-1 DRUGS USED FOR WEIGHT LOSS (2024), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

### DEFENDANT'S TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

55.     Despite the foregoing, and after NNAS's first use and registration of its Ozempic® and Wegovy® marks, Defendant has used and continues to use Novo Nordisk's Ozempic® and Wegovy® trademarks to market and sell Unapproved Compounded Drugs purporting to contain "semaglutide" that are not the Ozempic® or Wegovy® medicines and has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

56.     Defendant has engaged and continues to engage in the unlawful promotion of its Unapproved Compounded Drugs on its website and social media accounts in connection with its operation of a weight loss clinic.

57.     Defendant has made and continues to make unauthorized use of Novo Nordisk's Ozempic® and Wegovy® marks.

58.     As shown below, on its homepage, Defendant has advertised that it offers "Semaglutide (Wegovy) Weight Loss Treatments." *See* **Exhibit D**.



59.    Elsewhere on its website, Defendant has included images of an Ozempic® injection syringe, with the Ozempic® mark prominently displayed, at the top of posts describing Defendant's Unapproved Compounded Drug offerings.  *See* **Exhibit D**.



At Forever Weight Loss Clinic, we are dedicated to providing our clients with the most effective and advanced treatments for weight loss. One such revolutionary treatment is Semaglutide. This medication, originally developed for managing type 2 diabetes, has shown remarkable efficacy in aiding weight loss. In this comprehensive guide, we will explore everything you need to know about Semaglutide for weight loss, including how it works, its benefits, potential side effects, and what you can expect during your treatment at Forever Weight Loss Clinic.

60.    Defendant has also made unauthorized use of the Wegovy® mark in posts on the Facebook social media platform.

61.    In one post, Defendant stated and continues to state:  "Transform your weight loss journey with Forever Weight Loss Clinic and . . . Semaglutide(Wegovy)!"  *See* **Exhibit D**.



**Forever Weight Loss Clinic**
March 21, 2024 · 🌐

🌟 Transform your weight loss journey with
**Forever Weight Loss Clinic** and
Tirzepatide(Zepbound/Mounjaro) &
Semaglutide(Wegovy)! 🌟

62.     Each of the claims, implications, or representations identified in paragraphs 58–61 is either false, misleading, or both.

63.     Defendant has also falsely advertised and continues to falsely advertise its Unapproved Compounded Drugs by making statements that describe the Ozempic®, Wegovy®, and Rybelsus® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

64.     Defendant has falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

65.     On its website, Defendant has made and continues to make false and misleading representations regarding FDA approval for its Unapproved Compounded Drugs.

66.     On its website, Defendant has stated:  "Semaglutide has received approval from the U.S. Food and Drug Administration (FDA) for various indications, including the treatment of type 2 diabetes and obesity."  *See* **Exhibit D**.

67.     As shown below, Defendant has also stated:  "Originally approved for managing type 2 diabetes, Semaglutide has been found to significantly affect weight loss, leading to its approval by regulatory agencies including the FDA."  *See* **Exhibit D**.

## What is Semaglutide?

Semaglutide is a medication that mimics a hormone in the body called glucagon-like peptide-1 (GLP-1). GLP-1 helps regulate appetite and food intake by influencing the areas of the brain that control hunger. Originally approved for managing type 2 diabetes, Semaglutide has been found to significantly affect weight loss, leading to its approval by regulatory agencies such as the FDA.

68.     As shown below, Defendant has also stated that:  "Semaglutide, approved by the FDA for weight management, offers numerous benefits."  *See* **Exhibit D**.

## The Benefits of Semaglutide

Semaglutide, approved by the FDA for weight management, offers numerous benefits.

69. Each of the claims, implications, or representations identified in paragraphs 63–68 is false, misleading, or both.

70. Defendant has also made and continues to make the same false and misleading statements in reference to its Unapproved Compounded Drugs, using the term "GLP-1" instead of "semaglutide."

71. As shown below, Defendant has asserted that the FDA has approved its Unapproved Compounded Drugs, while listing the FDA approval date for Wegovy®.[13]   *See* **Exhibit D**.



There is hope on the horizon for those struggling with obesity.

The FDA approved GLP-1, a new class of weight loss medication, on June 4, 2021. GLP-1 is recommended for chronic weight management in patients with a body mass index (BMI) of 27 kg/m2 or greater and who have at least one weight-related ailment, or in patients with a BMI of 30 kg/m2 or greater.

72. The claims, implications, or representations identified in paragraph 71 are false, misleading, or both.

73. The FDA does not approve individual molecules like semaglutide, but rather only complete medicines, and the FDA has not approved, or reviewed for efficacy or safety, either semaglutide as an individual molecule or Defendant's Unapproved Compounded Drugs.

---

[13] *See, e.g.*, Emma Court, *Novo Nordisk's Weight Loss Injection Receives FDA Approval*, BLOOMBERG LAW (June 4, 2021), https://www.bloomberg.com/news/articles/2021-06-04/novo-nordisk-s-wegovy-weight-loss-injection-gets-fda-approval.

74.     Instead, the FDA has approved three of Novo Nordisk's medicines that contain semaglutide for the indications outlined in the preceding paragraphs.

75.     Defendant's false representations have misled and continue to mislead patients into believing, incorrectly, that the product with "semaglutide" that Defendant offers has been reviewed and approved by the FDA for safety and effectiveness.

76.     Defendant also has falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs have been subjected to clinical studies and trials or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines.

77.     On its website, as shown below, Defendant has referred and continues to refer to studies that on information and belief did not involve the Unapproved Compounded Drugs sold by Defendant.

78.     Listed under the heading "Our Achievements" on the home page of Defendant's website, Defendant has stated:  "In a 68-week research [sic], grown-ups shed 35 pounds or 15% of their total body mass on average."  *See* **Exhibit D**.

## Our Achievements

In a 68-week research, grown-ups shed 35 pounds or 15% of their total body mass on average. With ongoing usage, individuals have the potential to drop up to 30% of their body weight!

79.     Defendant has also made similar statements, apparently referring to the same study, this time linking it to Defendant's false assertions of FDA approval for "GLP-1":  "U.S. FDA trials

reveal remarkable results:  Up to ~15% body weight loss (~35 lbs) with this exceptional injection."
*See* **Exhibit D**.



**Clinical Trials Show Results**

U.S. FDA trials reveal remarkable results: Up to ~15% body weight loss (~35 lbs) with this exceptional injection. Long-term use boosts outcomes to 30%! Locate weight loss medication nearby.

80.     Defendant's other statements concerning clinical studies and trials include the following:

a.      "Clinical studies have shown that Semaglutide improves glycemic control, reduces food cravings, and enhances eating control, making it an ideal and effective tool in the fight against obesity."  *See* **Exhibit D**.

b.      "Clinical trials have shown that Semaglutide can lead to significant weight loss in individuals who are overweight or obese.  Participants in these trials experienced greater weight loss than those who received a placebo."  *See* **Exhibit D**.

c.      "Studies have shown that Semaglutide can lead to substantial weight loss, often exceeding 10% of initial body weight."  *See* **Exhibit D**.

d.      "Clinical trials have consistently shown remarkable results with Semaglutide.  Participants in FDA trials experienced significant weight loss, with some losing up to 35 pounds."  *See* **Exhibit D**.

81.     Each of the claims, implications, or representations identified in paragraphs 78–80 is false, misleading, or both.

82.     On information and belief, Defendant has not conducted any placebo-controlled studies on its Unapproved Compounded Drugs and is instead misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote its Unapproved Compounded Drugs.

83.     Defendant has also falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs are equivalent to the Novo Nordisk medicines that the FDA evaluated and approved for their safety, effectiveness, and quality.

84.     On its website, Defendant has misleadingly referred to and continues to misleadingly refer to Plaintiffs' FDA-approved medicines Ozempic® and Wegovy® when discussing Defendant's Unapproved Compounded Drugs.

85.     As shown below, Defendant has referred to Ozempic® and Wegovy® as "Brand Names" of "Semaglutide."  *See* **Exhibit D**.

**Semaglutide (Brand Names: Ozempic, Wegovy)**: Highlight Semaglutide, another popular GLP-1 medication. It enhances insulin secretion and suppresses appetite. Note its recent popularity due to significant weight loss results in clinical trials.

86.     Defendant has made and continues to make similar statements in promotional posts on Facebook.

87.     In one post, Defendant has indicated and continues to indicate the equivalence of Novo Nordisk's FDA-approved medicines and Defendant's Unapproved Compounded Drugs by stating that it "accept[s] HSA [funds] for [patients'] Semaglutide(Wegovy)."  *See* **Exhibit D**.



**Forever Weight Loss Clinic** · Follow
January 12, 2024 · 🌐

Unused funds in your HSA account?? New year funded HSA??YES, we do accept HSA for your Semaglutide(Wegovy) or Tirzepatide (Mounjaro/Zepbound) weight loss journey!

88.     Each of the claims, implications, or representations identified in paragraphs 85–87 is false, misleading, or both.

89.     Defendant's representations characterizing Ozempic® and Wegovy® as equivalent to or mere "Brand Names" of "Semaglutide" are misleading and falsely convey to patients that

Defendant's Unapproved Compounded Drugs and other "Semaglutide" drugs have been reviewed or approved as generics by the FDA.  They have not.

90.     Novo Nordisk is not directly or indirectly supplying semaglutide to Defendant or any compounding pharmacies from which they may be sourcing their Unapproved Compounded Drugs.

91.     The FDA has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to Novo Nordisk's medicines.

92.     Defendant has no basis to compare the "semaglutide" allegedly in its Unapproved Compounded Drugs to Novo Nordisk's FDA-approved medications containing semaglutide.

93.     On information and belief, Defendant has engaged in and continues to engage in these unlawful practices to attract customers and generate revenues and profits, including by passing off its Unapproved Compounded Drugs purporting to contain "semaglutide" as the Ozempic® and Wegovy® medicines.

94.     Defendant's prominent and misleading use of the Ozempic® and Wegovy® marks is likely to cause patients to believe, incorrectly, that they are purchasing genuine Ozempic® and Wegovy® medicines; that Defendant is a source for Novo Nordisk's FDA-approved semaglutide medicines; and that Defendant's services are provided, licensed, sponsored, authorized, or approved by Novo Nordisk.

95.     Defendant's use of the Ozempic® and Wegovy® marks is without the permission, consent, or authorization of Novo Nordisk.  Defendant has no right to use, and Defendant knows that it has no right to use, the Ozempic® and Wegovy® marks in connection with Defendant's Unapproved Compounded Drugs or otherwise.

96.     Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendant, including the Unapproved Compounded Drugs.

97.     Defendant's advertising and promotional materials are false and misleading, suggesting or stating an association with Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines when no such association exists.

98.     There is no need for Defendant to use the Ozempic® and Wegovy® trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

99.     Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks is likely to cause confusion, mistake, and deception, and infringes Plaintiffs' established exclusive rights in those trademarks.

100.    Defendant's false and misleading statements and practices are similarly likely to cause mistake and deception in the marketplace.

101.    Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks.  Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalents thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[14]

---

[14] *See, e.g.*, Charlotte Huffman & Mark Smith, *Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs*, WFAA (Feb. 9, 2019), https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested"); U.S. FOOD & DRUG ADMIN., *supra* note 7

102.    On information and belief, unless enjoined by this Court, Defendant will continue to use the Ozempic® and Wegovy® marks and otherwise falsely advertise its products as associated with or being the Ozempic® and Wegovy® medicines, all in violation of Plaintiffs' rights.

103.    On information and belief, unless enjoined by this Court, Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks will continue to cause confusion, mistake, and deception, and infringe Plaintiffs' established exclusive rights in those trademarks.

## FIRST CAUSE OF ACTION

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

104.    Plaintiff NNAS realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

105.    Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

106.    Plaintiff NNAS's right to use its Ozempic® mark is incontestable and therefore constitutes conclusive evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

107.    Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registrations.

---

("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

108.    By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendant with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

109.    Defendant uses the Ozempic® and Wegovy® marks in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

110.    Defendant's use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

111.    The above-described acts of Defendant constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

112.    Defendant has unfairly profited from its trademark infringement.

113.    By reason of Defendant's acts of trademark infringement Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

114.    Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

115.    Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

116.    By reason of Defendant's acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiff NNAS to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

117.    By reason of Defendant's willful acts of trademark infringement, Plaintiff NNAS is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

118.    This is an exceptional case, making Plaintiff NNAS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

<u>**SECOND CAUSE OF ACTION**</u>

**Trademark Infringement, False Designation of Origin, and Unfair Competition<br>in Violation of 15 U.S.C. § 1125(a)(1)(A)**

119.    Plaintiffs reallege and incorporate each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

120.    Defendant uses the Ozempic® and Wegovy® marks in commerce in connection with Defendant's goods and services and in commercial advertising and promotion of its goods and services.

121.    Defendant uses the Ozempic® and Wegovy® marks in commerce in a manner that is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that Defendant's goods or services are authorized, sponsored, approved by, or otherwise affiliated with Plaintiffs, with Plaintiffs' genuine Ozempic® and Wegovy® medicines, and with the Ozempic® and Wegovy® marks.

122.    The above-described acts of Defendant constitute infringement of the Ozempic® and Wegovy® marks and use of false designations of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling Plaintiffs to relief.

123.    Defendant has unfairly profited from the actions alleged.

124.    By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

125.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs, the Ozempic® and Wegovy® trademarks, and the valuable goodwill associated with the trademarks.

126.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

127.    By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiffs to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

128.    Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

129.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### Defendant's False and Misleading Advertising and Promotion
### in Violation of 15 U.S.C. § 1125(a)(1)(B)

130.    Plaintiffs reallege and incorporate each allegation in the preceding paragraphs of this Complaint as though fully set forth here.

131.    Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

132.    Defendant has violated and continues to violate the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial

advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

133.    Defendant has also engaged and continues to engage in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or who Defendant is trying to persuade to purchase its drugs) information that makes false or misleading statements, including those described herein.

134.    The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

135.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

136.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

137.    By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

138.    Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant, entitling Plaintiffs to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

139.    The above-described acts of Defendant are willful, entitling Plaintiffs to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

140.    This case is exceptional, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

141.    Plaintiffs reallege and incorporate each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

142.    The above-described acts of Defendant constitute common law unfair competition.

143.    The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

144.    By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

145.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

146.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

147.    By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiffs to preliminary and injunctive relief in addition to disgorgement of Defendant's profits (enhanced at the Court's discretion) and corrective advertising costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.    That the Court enter a judgment against Defendant that Defendant has:

a.     Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks in violation of 15 U.S.C. § 1114(1);

b.     Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

c.     Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

d.     Engaged in unfair competition and deceptive trade practices under the common law of Missouri.

2.     That the Court declare that each of the above acts was willful.

3.     That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

a.     using the Ozempic® and Wegovy® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in those marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

b.     advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

      i.       are, or contain, genuine or authentic Novo Nordisk Ozempic® and Wegovy® medicines;

      ii.      are sponsored by or associated with Novo Nordisk;

      iii.     are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

      iv.     achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

      v.      achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

      vi.     are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

      vii.    contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.     engaging in unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines; and

d.     engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

4.      That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that:  (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.      That the Court award Plaintiffs monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair competition with respect to Novo Nordisk's Ozempic® and Wegovy® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117.

6.      That the Court order Defendant to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

7.      That the Court award Plaintiffs pre-judgment and post-judgment interest on all damages.

8.      That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

9.      That the Court award Plaintiffs the costs of suit incurred herein.

10.     That the Court award such other or further relief as the Court may deem just and proper.

Dated:  August 4, 2025                    Respectfully submitted,

                                          **LEWIS RICE LLC**

                                          By: /s/ Oliver H. Thomas
                                                Oliver H. Thomas, #60676MO
                                                Lindsey M. Bruno, #73055MO
                                                600 Washington Avenue, Suite 2500
                                                St. Louis, MO  63101
                                                (314) 444-7711
                                                (314) 612-7711 (facsimile)
                                                othomas@lewisrice.com
                                                lbruno@lewisrice.com

                                          *Attorneys for Plaintiffs NOVO NORDISK A/S*
                                          *and NOVO NORDISK INC.*